In the Matter of the Compensation of
Angela M. Stratis, Claimant.

STRATIS,
*Petitioner,*

*v.*

GEORGIA-PACIFIC CORPORATION,
*Respondent.*

(WCB 85-14407; CA A45884)

773 P2d 821

David C. Force, Eugene, for petition.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant petitions for review of our decision that affirmed without opinion an order of the Workers' Compensation Board affirming and adopting the order of the referee that denied her claims for aggravation and medical services. 94 Or App 781, 767 P2d 934 (1989). We treat the petition as one for reconsideration, review for substantial evidence and errors of law and adhere to our previous decision.

In July, 1981, claimant injured her hands while working as a grader/dryer for employer. She continued to work but was laid off near the end of August. She has not worked since then. On September 4, 1981, Dr. Jefferson diagnosed "carpal tunnel syndrome." A few days later, claimant signed a report of injury on Form 801, in which she described her injury as a "strain" of the "fingers" of her left and right hand and gave the cause as the "continuous use of fingers on job, pulling wood off dryer." On September 25, 1981, employer accepted the claim as submitted and as a disabling injury. It also described the accident as "continued use of hands in performing work caused fingers on both hands to become painful." In October, 1981, Jefferson wrote to employer that, on September 4, 1981, he had seen the "signs and symptoms of carpal tunnel syndrome, which I felt was related to her employment at Georgia-Pacific," but that he "did not authorize time off."

Claimant continued to suffer pain and swelling in her wrists and, after further diagnoses in November and December, 1984, underwent a right carpal tunnel surgical release in March, 1985. She was diagnosed as medically stationary as of June 14, 1985. On September 23, 1985, a determination order awarded her temporary total disability and 10 percent permanent partial disability of the right wrist.

Claimant continued to suffer pain and numbness in her hands, as well as other symptoms, and consulted several doctors. About November 1, 1985, she filed an aggravation claim, which employer denied on January 13, 1986. Employer wrote:

> "This letter is to confirm that you have an accepted bilateral carpal tunnel condition, with no residuals.

> "It is now Georgia-Pacific's position that your current

problems are not industrially caused, and we must respectfully deny your claim for aggravation.

"Additionally, all medical bills will be reviewed on an individual basis, as to which will be accepted and which will be denied."

In March, 1986, employer denied a claim for $33.25 for diagnostic tests. The denial states that employer has

"received a charge from Pathology Consultants totalling $33.25, and itemizing diagnostic tests for anti-nuclear antibodies and rheumatoid factor RA. These tests were recommended by Dr. John Mundall.

"Please be advised that it is Georgia-Pacific's position [that] this bill is in no way related to the initial injury of July 1981, and we are, therefore, denying responsibility for the charge."

Claimant requested a hearing on the determination order, the denial of the aggravation claim and the denial of the medical bill.

The referee affirmed the determination order and claimant does not assign as error the Board's affirmance of the referee on that point. The referee also denied the aggravation claim. He stated:

"Following claim closure claimant continued to treat with Dr. Jewell for hand pain, right worse than the left. Follow-up examination by Dr. Macritchie on September 30, 1985 on referral of Dr. Jewell found right hand pain, etiology unknown. She was unable to explain claimant's hand pain. Dr. Wasner in examination of August 28, 1985 likewise found non-specific hand pain, etiology unknown. While Dr. Jewell by letter dated October 16, 1985 to the employer found claimant suffering a recurrence of numbness, pain and swelling in her hands and not medically stationary, he made no specific relationship of this condition to her job, and Dr. Mundall, to whom Dr. Jewell had referred claimant, saw claimant on December 13, 1985 and found claimant with very little in the way of neurological abnormallities [sic] and concluded that a problem was musculoskeletal and Dr. Zivin who saw claimant on November 27, 1985 found no neurological grounds that would attribute her multitude of physical symptoms to the job exposure and found that none of her current symptoms could be explained by carpal tunnel problems."

The referee also stated that, after the surgery, "[claimant]

continued to treat with Dr. Jewell and repeat examination on February 5, 1986 found her condition unchanged." The referee also wrote that "since 1985 her condition has remained approximately the same." Furthermore, claimant testified that after the determination order, "the symptoms were the same * * *. It hasn't changed. * * * I don't think they were worse."

■ Claimant argues that the issue is the scope of employer's 1981 acceptance and that, under *Bauman v. SAIF,* 295 Or 788, 670 P2d 1027 (1983), and *Georgia-Pacific v. Piwowar,* 305 Or 494, 753 P2d 948 (1988), employer is liable for her "worsening." On the issue of aggravation, the question is not the scope of employer's initial acceptance, but whether claimant's condition worsened after the determination order of September 23, 1985. *See* ORS 656.273(1).[1] There is substantial evidence to support the Board's finding that it did not. The Board did not err when it affirmed the referee's denial of the aggravation claim.

■ The referee also upheld the March, 1986, denial of the $33.25 bill from Pathology Consultants for tests that it made for antinuclear antibodies and rheumatoid factor RA. He stated:

> "This matter was incompletely developed at hearing and it appears that all bills were received after the denial. There is no showing when the bills were incurred. A claimant has the burden of proving a claim. Consequently, the denial must be affirmed."

Although the bill from Pathology Consultants was received before, not after the denial, ORS 656.245(1) provides that "[f]or every compensable injury, the * * * employer shall cause to be provided medical services for conditions resulting from the injury." Claimant must show by a preponderance of the evidence that the medical services were provided for a condition "resulting from the [compensable] injury." *See Brooks v. D & R Timber,* 55 Or App 688, 691, 639 P2d 700 (1982).

Claimant asserts that Dr. Mundall ordered the diagnostic test to diagnose a previously accepted condition. On December 13, 1985, Mundall examined claimant and reported:

---

[1] Although the legislature amended ORS 656.273 by Or Laws 1987, ch 884, § 23, it did not amend subsection (1).

"IMPRESSION:  1.  Previous right carpal tunnel syndrome treated surgically.

2.  Continued right arm pain, most likely secondary to a musculoskeletal cause such as tendinitis.

"I doubt that the patient has a sensory or motor polyneuropathy. She has absolutely normal sensory and motor function in the feet and her symptoms are atypical for this illness. I can't so easily, however, rule out a multiple mononeuropathy as suggested by Dr. Macritchie's studies. However, I think that it is also unlikely based on my examination. She really has very little in the way of neurologic abnormalities and I think her problem is musculoskeletal now. She has had a definite change in her symptoms from surgery and I think that there was most likely a successful decompression of her median nerve (I do not know what her preoperative electrical studies showed). Because of some functional aspects of her exam, (she seems to embellish her symptoms and has a functional giving away type motor exam. of the right arm) I wondered about 'fibrositis.' If she tolerates it and has not been already tried, I would suggest an antidepressant in managing her problems. I will send a copy of this note to Dr. Macritchie who is seeing her on an regular basis. The patient is going to get a copy of her blood tests. If she has not had a screen for the causes of a multiple mononeuropathy such as an ANA, RA and Sed rate and glucose, I am going to go ahead and order those."

The last sentence refers to the tests for which Pathology Consultants charged.[2]

In *Georgia Pacific v. Piwowar, supra,* the employer attempted to terminate the claimant's permanent partial disability payments after it had accepted her "sore back" condition. It learned after its acceptance that the condition might be caused by a disease—ankylosing spondylitis—that was unrelated to the claimant's work. The court, however, required the employer to continue to pay compensation for the previously accepted condition on the ground that an employer must continue to compensate a claimant for specific accepted conditions, regardless of the cause of that condition. *Piwowar* did not consider the compensability of medical services under ORS 656.245. Compensation, however, includes medical services resulting from the accepted condition. ORS 656.005(8).

---

[2] The results of the tests were negative.

*Piwowar* requires us to consider the scope of employer's original acceptance. If the medical services in dispute resulted from "strain" of the fingers of both hands or carpal tunnel syndrome, employer must pay for them.

Even if we give full scope to the language of the 1981 acceptance, there is substantial evidence to support the Board's determination that claimant's symptoms when Mundall ordered the diagnostic procedure were not results of the accepted conditions of "strain" of fingers or carpal tunnel syndrome. The Board did not err when it affirmed the referee's ruling that upheld denial of the $33.25 medical bill.

Reconsideration allowed; former decision adhered to.